The next case of the panel here is United States v. Willie Tyler, appellate number 18-1319. This court's prior decisions in this appeal, as well as its prior decision in Accomplice Roberta Bell's appeal, they directly support the validity of the jury's verdict in the defendant's most recent criminal trial. Support in the sense that it's a law of the case, or it's some sort of precedential holding, or simply support because we're dealing with essentially the same fact situation, and therefore we should come out the same way. All three of the above, Your Honor. The prior decisions in Mr. Tyler's appeal are law of the case. Additionally, the precedential opinion of the court- That's pretty broad. What decisions, the decisions that Fowler applies, or the decisions that there is a requisite showing sufficiency of the evidence, what prior decisions are controlling? So both that Fowler applies and that there's sufficient evidence to support the conviction. Now, the prior trials have nothing to do with this trial. We have to look at the evidence adduced in this trial in order to determine what the jury had to decide. So we really, anything that was not brought forth in this trial is largely irrelevant from a sufficiency of the evidence standard, is it not? It's irrelevant to the extent that when the court's evaluating the sufficiency of the evidence, it is looking at the 2017 trial record. That being said, to the extent that the trial records between the 2017 record and the earlier trials are materially the same, this court's prior decisions do control. Materially the same? I don't get that. It seems to me that if I'm a juror and I hear evidence in the 2017 trial and I make a decision based on that evidence, the court in deciding whether my decision's proper or not doesn't look at some other trial, looks at what was adduced in this trial. That's correct, Your Honor. I completely agree with that. But in deciding the question of law, which is whether there was sufficient evidence, the court would look to the prior decisions as it would look to any precedential decision of this court. Can I put it in a different way, see if this is what you're trying to tell us? Are you telling us that you agree with Judge Rendell's view, and it's the view of course that's correct, that the only evidence in front of us is from the 2017 trial? That's correct. And that reasonable inferences can be drawn from that evidence, right? Exactly. And are you saying that under very similar evidence, similar inferences were drawn, and so there is support for at least the reasonableness of the inference being drawn? You're not asking us to draw the exact inference based on the facts in the Bell case. You're asking us to draw an inference that was also deemed as reasonable in the Bell case, but based on this evidentiary record. Exactly, Your Honor. Got that? Okay. And the records are very, very similar. And so one of the elements at issue is whether Mr. Tyler had the intent to prevent communications with law enforcement. Take us through the evidence on that point. There's the fact that Ms. Proctor was an informant for over a year. How much did Willie Tyler, what is there evidence as to what Willie Tyler knew of what Doreen Proctor was doing? Well, there's no dispute that he knew that she had been an informant, that she had cooperated against multiple individuals with him. Wait, wait, wait. I don't know that that's actually correct. What evidence is there that he knew that? There's evidence that he knew that she was going to testify against David Tyler. Correct, Your Honor. And there's also evidence that Doreen Proctor had testified in the four preliminary hearings for the individuals that she had conducted controlled buys against. Detective Phones testified... What did Willie Tyler know of that? Well, Detective Phones testified that those were obviously public hearings. There's no dispute that the public knew that Doreen Proctor had cooperated and had testified in prior hearings. Okay, so let's assume... And at the Hudge trial as well. Exactly, Your Honor. So let's assume that Willie Tyler would have known that. What evidence is there that he had an intent, any other intent other than killing her to prevent her testimony? The fact that he had cooperated before supports the reasonable inference that he was concerned that she would have cooperated, again, in the same way that the court held that her cooperation against David Tyler and the others supported the reasonable inference that Bell was... What was he thinking she was going to communicate to law enforcement? She basically was done in terms of the buys. Phones testified he wasn't going to have her do anything more. These were the four controlled buys. That was it. She wasn't... Was she really done? She was not really done. She was done as far as the buys were concerned, but Detective Phones testified that she was continuing to provide information about David Tyler as well as other individuals up until the time of her death. But what did Willie... What was Willie... I mean, most of these cases, you know, somebody gets killed and they say, well, you were going to rat on me. I mean, you know the person's going to the cops and going to squawk. What did Willie Tyler know? What evidence is there that he knew anything about anything further she might be going to do? Isn't it just a kind of a hunch rather than... You have to prove beyond a reasonable doubt that part of his intent, he was motivated by a desire to keep her from communicating with law enforcement. I just don't know what evidence is there that would support that. I think it's even stronger here than the hypothetical that Your Honor raised that someone had cooperated and so the assailant's worried that the person or the witness had seen something and so the assailant's worried that the witness will say something to law enforcement. Here Doreen Proctor had already cooperated with law enforcement and she's continuing to live in the very neighborhood, about a 10 minute walk from where Willie Tyler, David Tyler and Mary Jane Hodge were all living together. But she'd already done what she had to do and Willie never sold drugs. What was he afraid she was going to communicate? So Detective Phones said that she actually was continuing to cooperate. So the jury heard evidence that Doreen Proctor was not done, that she was continuing to cooperate with respect to David Tyler, Willie Tyler's brother. Willie Tyler was also involved in drugs at least to some extent, Your Honor. There's testimony from Gwanda Campbell. That she used to get high with him. Correct, Your Honor. That's it. Well, there was testimony from Laura Barrett that she overheard the conversation between Roberta Bell. After Doreen was killed. After Miss Proctor was killed, but that still would support the jury's inference that Willie Tyler, at a minimum, had knowledge about his brother's drug trafficking activities, something that he hasn't disputed. And that he was at least involved to some extent. There was an argument between Roberta Bell, David Tyler, and Willie Tyler about drugs that David Tyler was going to provide to Jerome King, but had actually provided to Willie Tyler. What was the story about trips to Jamaica? Was that Willie Tyler that had made trips to Jamaica? Detective Phones testified that Doreen Proctor had told them that David Tyler had a source in New York City and had made multiple trips to Jamaica. And another way I'd respond to Judge Rendell's question, Your Honor, is that we certainly believe there's sufficient evidence that Willie Tyler participated in this murder. So the question then becomes, why would he have done that? And certainly part of his motivation. Keep her from testifying. Certainly that was part of his motivation, as it was part of Roberta Bell's motivation in murdering her, because Roberta Bell was dating David Tyler. But just as this court held in Roberta Bell's appeal, there's also the reasonable inference that Willie Tyler, David Tyler, Roberta Bell did not want Ms. Proctor to continue talk to law enforcement. I think the jury probably confronted a common sense question, which is whether Willie Tyler, David Tyler, Roberta Bell wanted Ms. Proctor to continue communicating with law enforcement. Certainly the answer to that is no. Ms. Proctor's cooperation was at its zenith. She had been testifying. And the fact that she had been testifying and was scheduled to testify on the morning of her murder in David Tyler's trial does not also preclude the inference that she was continuing to cooperate and that the murderers did not want her to continue to cooperate. So if we took out the fact that she even ever testified, we have all the same facts. And instead of the testimony, we have word on the street, information to suggest that she was cooperating. Would it be your position that the same inference could be drawn? Absolutely. And so the presence or absence of her testimony is one thing she did, but not the exclusive thing. It's one thing. And I think it only makes her cooperation and continuing cooperation all the more likely. But if you separate out her testimony, the reason I think it would be sufficient evidence still is because I point to the court, to the Stansfield case, which was decided the year before Roberta Bell's case. It's discussed at length in Roberta Bell's opinion. And I'll be clear, it was abrogated to a certain extent on the qualifying officer element, abrogated by Fowler. But in that opinion, the court also addressed the intent element. So in that case, the witness was a friend of the defendant, had provided information to the police about a suspected arson at the defendant's house. The defendant got wind of this, went to the witness's home, held a gun to his head, held a gun to his parents' head, and asked him a few questions, including, why did you tell police about the fire at my home? And from that, the court held there was also the reasonable inference that in addition to wanting to know why the witness had cooperated, the defendant also was saying, don't ever cooperate again. And so Judge Schwartz, I think that answers your hypothetical about why there would be sufficient evidence, even without Doreen Proctor's continuing cooperation. But here we have, please, go ahead. I wanted to, I was going to turn to communication to a federal officer to try to follow up on Judge Sirica's question. He was asking you about the evidence that Ms. Proctor had started to provide information about drug sources outside of Pennsylvania. So I wanted to just draw your attention to that. And the question I have has to do with, do we need to address both whether Agent Diller was a qualifying federal officer, or could we just rely on Special Agent Humphreys? You could just rely on Special Agent Humphreys. Certainly, we think there's sufficient evidence under both theories. And as to Agent Diller, I don't want to jump over the question, Your Honor, but as to Agent Diller, we again have precedential support with very similar, if not identical, evidence. This court concluding that Agent Diller, at least the jury can conclude, that Agent Diller was a qualifying officer under Section 1515. Which of the group of cases arising from these events do you say that inference can be supported by? The Tyler 2, the decision after Tyler's second trial, directly supports that. And then the court's analysis and Judge Schwartz' analysis in Tyler 3, where the court indicated there was evidence that Agent Diller was a qualifying officer under Section 1515. All that evidence came in during the most recent trial. Even if you want to skip over Agent Diller, as to Agent Humphreys, there is sufficient evidence to. And I would point this court to the Smith case out of the Fourth Circuit, which the defense seems to acknowledge that there is sufficient evidence in that case. The Fourth Circuit characterized the evidence in that case as substantial. When you compare that case to this case, the evidence was much less significant in that case. I see my red light is on, unless there are any other questions. I'll sit down for now and talk to you again on rebuttal. OK, we'll see you on rebuttal. Thank you. Thank you, Your Honor. May it please the court, my name is Quinn Sorensen, and I do represent the dependent, Willie Tyler. I think we've now established that the law of the case doctrine and binding precedent rule does not require and does not even allow for this court to simply rely on the prior decisions of this court in order to affirm or to reverse it, excuse me, the sufficiency rulings in this case. But what I heard on the opposite side is that there is evidence here that the evidentiary presentation was so similar that the prior decisions of this court should somehow persuade this court to follow those decisions. And I would say quite the opposite. There are material distinctions between the evidentiary presentations in the trials that actually show not only that the cases are in apposite to showing sufficiency, but show to the contrary that the evidence here was insufficient. So why don't we focus on what was absent here that was present in Bell? Certainly. And without going into the individual elements at this point in time, I can point to at least four separate items of evidence or evidentiary presentations, and they can actually be called from this court's prior decisions. So starting off, for instance, with Bell. Bell at page 1350 of the opinion refers to the fact that it was undisputed in that case that Doreen Proctor was continuing to provide information, presumably new information, to law enforcement. No such concession was made in this case. Again, if you go- But if there was evidence to support the reasonable inference that she was continuing to provide information after her affirmative cooperation concluded, that's okay, right? Well, that would be, then we are talking about what the evidence it was in this trial. There was certainly no concession, and then the question is whether there was evidence that she was continuing to provide information. And I would say two things to that, with that, and then I can go on to the rest of the evidentiary presentation differences. But on the providing of information, Detective David Phones of the Colorado Police Department certainly did say at page 388, 389 of the appendix, that she was continuing to provide information. But he could provide no example of what information she was providing. And to get to your point, Judge Riddendell, she had already been cooperating at that point for more than a year. She had been debriefed on numerous occasions and actually testified at a trial in the case. And it is just inconceivable that prior to putting her on the stand, prosecutors, investigators would not have assured themselves that she already provided all the information she could have. But she was still living in the community, so she could have gotten new information after she testified in the first cases. And she could have been providing it, and we have evidence that says she was providing information. I don't believe that's the case here. I will push back on the hypothetical there for a little bit. She was certainly living in the community, but at that point in time, she was known to have been working with law enforcement. There was no doubt about it. She was not working as an informant anymore. She'd already been debriefed on her interactions with David Tyler, Willie Tyler, elsewhere. So there was no reason to assume or infer that she was continuing to provide information. And to move on to another difference in the evidentiary presentations, in Tyler 2, for instance, in this period at 92, the court referred to the fact that at the time of the murder, Willie Tyler knew that David Tyler was going to be subject to federal prosecution. You moved from Bell to Tyler. My question had to do the difference in the evidentiary record in Bell, not all the other cases. Oh, okay. Well, to go back to Bell, excuse me. Because I know what you're talking about there. Then I'll get back to that. But in Bell as well, if you go to 1350 of the court's opinion, you find that, in fact, in that case, there was evidence, or at least the court cited evidence, that the task force investigating, the one that involved Agent Ronald Diller, was in fact a joint federal state program. In this case, there was evidence quite to the contrary, that this task force was local in nature, composed only of local officials. And the degree it worked with federal officials, it did so merely in a matter of comity, not as serving with them or as a joint program. And then if we can get back to the differences in the other trial, the second trial, that is Tyler II, if you want to look at that opinion. Okay, we don't need to do Tyler II. Well, I do think that there is a fundamental difference. And it goes to two points in that opinion. And that's at page 99. And it goes to the fact that there, there was testimony from local officials that not only did they intend to refer Ms. Proctor to federal authorities to be debriefed, to be questioned, but that federal authorities, Agent Humphreys, would have accepted that and would have actually questioned Doreen Proctor. That testimony was not presented in this case. In this case, though, I understood the testimony to say that Agent Humphreys was, it would be all but certain that he would have talked to her directly. I don't believe so, Your Honor. I don't think there was any of that testimony. In fact, in this case, there had been no evaluation of Doreen Proctor made at the point. I'm saying that he said he would have talked to her. I didn't say he did talk to her. He said, hypothetically, if there was some individual that maybe satisfied certain criteria, then I might be interested in doing so. He didn't say that this, in this case, he would do so. And that was the testimony from the prior trials. And again, then the other part about the federal communication aspect that differed from this trial and the last two trials, including in Tyler II, and again, this page, at page 99, the court refers to the fact that in that case, Agent Diller stated that he was, in fact, serving the federal government as an advisor or consultant testified to that fact, which is, in fact, the very standard under 1515-84. In this case, he could not do so and, in fact, explicitly refused to do so at pages 621 through 627 of the appendix. In fact, the only thing he could say in this case was that he was a coordinator of some sort, that he coordinated with the federal government, not that he served the federal government. And that is the fundamental requirement of that particular provision. So I understand your argument on Diller as to Humphreys. You're saying there's insufficient evidence for us to conclude she would have ever spoken to him. Yes, Your Honor. And the reason being is that, again, you have to get then, the reason Agent Humphreys would have been contacted is if there is a reasonable likelihood. That's the requirement, of course. It's a very low bar. It may be a low bar in certain cases, but it is a bar. And in this case, it is not met. And the distinction between this case and a case, for instance, such as Smith, such as Bruce, is very stark. So, for instance, in those cases, Bruce especially, and this is something this court really focused upon, it found a reasonable likelihood that there would be a communication with federal officials. Because in that case, what the evidence showed was that there actually was a federal prosecution of the underlying crimes commenced, investigated. And then the court inferred from that reason that, hey, if without the witnesses, the federal government, federal officials did investigate the crimes, then clearly they had an interest in doing so. They would have done so, and they would have questioned the witness. In this case, there is no evidence in the record whatsoever that the federal government ever brought a federal investigation or a federal prosecution against David Tyler, Willie Tyler, anybody for the underlying drug crime. It only has to be a reasonable likelihood that such a communication would occur, and you're describing it at a higher bar than the Fowler standard imposes. I don't believe I am, Your Honor. What I am saying here is that if there was a federal interest in investigating the drug crimes at issue here, the federal government certainly would have done so when it was investigating the murder of Doreen Proctor, which they knew about from 1992 onward and began investigating. The fact that they did not, even though they had all of Doreen Proctor's statements, not only suggests but to my mind shows that if they had Doreen Proctor available, they still wouldn't have deemed a good federal interest in investigating the drug crime, and they wouldn't have questioned her. Do you want to take a breath? Sorry. I mean, I'm a fast talker. I like to get all my points. I'm a fast listener, but wow, you needed to take a breath. Let me ask you this. Do you agree that the district court erred in the way that it articulated the Fowler standard? Because it suggested that Fowler only applies in one unique circumstance. Would you agree that that was incorrect? It may not matter for the outcome that you're happy with, but do you agree it was wrong? I take your point that it doesn't matter for the outcome, and I'll tell you why, but I do think that there can be issue taken with the district court's analysis in that regard, and I think that's because Fowler can be read properly, in my view, not to say that the reasonable likelihood standard is going to be totally inapplicable in a case such as this, in which the evidence shows that only one specific individual was in the mind of the defendant, but rather, Fowler does recognize quite clearly to my mind that the standard applies differently based on the circumstances, and the real, the distinction, the crucial distinction for these purposes is, again, whether the prosecution met its burden of proving that the defendant had not only an individual in mind, but in fact, law enforcement writ large, law enforcement in general, and Fowler makes this very clear, for instance, page 764, that that is the predicate question, whether the government has sustained its burden of proving beyond a reasonable doubt that at the time of, in this case, the murder, the defendant, Willie Tyler, had in mind law enforcement in general, as opposed to simply David Bones. Because if you have just a specific individual in mind of the defendant, the question really only is, is that individual, is that officer a federal official? If not, then by definition, there is not a reasonable likelihood that the targeted communications would have gone. So then the way the district court applied it, you would agree, is not accurate. Well, I think it's now, I think you reach the same result, essentially, because what the district court said at the end of the day is because we have a specific individual in mind here, the only question is whether the, here, the detective Bones is a federal official. He's not. He's being commendably gentle with the district court. I try to be, Your Honor, I do try to be. But I do think the district court got it right in the result, and specifically here, again, the predicate question being, what did the prosecution prove that the defendant had in mind? And in this case, getting back a little bit to Judge Randall's question, the only evidence of record is the only person that Willie Tyler could have formed an intent to prevent communications to was Detective David Bones. He was the only person who had appeared publicly, who was known to be working publicly with Doreen Proctor at the time of the murder, at the time of the trial. He had appeared with her on numerous occasions, testified at trial, and he was set to testify the next day after her murder. But let's assume that that fact is established. Would you then agree that there is, that you could draw an inference that the goal in trying to, the motive for her murder was to prevent further communications with Detective Bones? No, I do not believe, Your Honor, that that is the case. And that is getting back, again, to certain of Judge Randall's questions and certain of the other person's questions, which is to state that's a separate question as to whether he was trying to prevent communications. But at that point, he had been cooperating, she had been cooperating with law enforcement for a year. There was no indication that she had further information to convey to law enforcement, no further information to convey to Detective Bones. Once she had already communicated all of the information she had to Detective Bones, she had no further information to communicate. Certainly, Willie Tyler would have had no reason. Well, what did Willie Tyler know about that? The fact that she did or didn't, that's not the issue. The issue is whether he had a motive, he was motivated by a desire. So, it's really a question of what he knew about her. Maybe he didn't know she ceased providing, did he? Well, I think then we're talking about... What did he know? And that's, I think, getting back to, you asked that question specifically. And there is no evidence of what he knew. The only evidence that he knew anything, and it's an inference that's to be taken from the trial record, is that maybe he knew that she had testified to these facts at the trial, at the preliminary hearings. But at that point, during that testimony, she had already testified as to all the relevant, essentially relevant facts for these purposes. And the only reasonable assumption from Willie Tyler or anybody else is that while she was cooperating with law enforcement over the course of a year, she would have provided all further information she had. There would have been no reason, whatever Willie Tyler knew or did not know, there certainly wouldn't have been any reason to suspect, so far as I can tell, that she would have suspected that she had further information to convey, that she had held something back. Then you say it has to be new information? Why can't it be information that she might have shared and she wanted to share again to get it to the proper authorities who could do something about it? I would say the interstate connection information that's been reported in the record. I think there's two responses to that, Your Honor, if I may. And I think they go to a little bit different points. But if we're talking only about communications with detective phones, communication of information, that's the phrase used in the statute, that necessarily means a transfer of information. So in other words, once information has been transferred, once she provided the information to detective phones, they both had the information at that time. There could be no further transfer of that information, no further communication to detective phones. But you've prepared, you've tried tons of cases, I'm sure, usually people meet with witnesses more than once. Well, certainly, but at that point, it's a discussion of information that has already been communicated. It is not a communication of new information. And to get past it, but I think it's a matter of... Fowler say it has to be new information? Fowler does not get to this point and had no reason to address it, but I think that's a necessary reading of the statute. And I think even if you go beyond that, the question, again, getting back to Judge Rendell's point, is that the question here is not really whether there could have been a communication of information, it's whether Willie Tyler would have known about it, suspected it, intended to prevent it, and there was no evidence whatsoever that he had any reason to suspect that she had information to convey. And again, getting to the point, if it wasn't new information, then why would he be motivated to kill her to stop her from communicating it? It had already been out there. He had every reason to suspect everybody at the police department knew about it. So that would take away his intent entirely. And I don't think at that point in time you can find that he had any intent to prevent a communication whatsoever. And I think that's what the record clearly should, to get to Judge Rendell's point. And then again, if you get past that, if you hear, and that's as Judge Jones found, you cannot find that she had any, or the defendant had any intent to prevent Dorian Proctor from further communications. And then if you get past that point, you cannot find that Willie Tyler would have suspected that she was working with anybody other than Detective Phones. So the only question further is whether Detective Phones could be classified as a federal law enforcement officer, which he clearly could not. And then even if you get past that, if you somehow find that the government had met its burden of proof beyond a reasonable doubt that Willie Tyler intended to prevent communications with law enforcement more generally, for the reasons I've set forth before, you cannot find that because Ronald Diller does not qualify. He was not serving the federal government. He was serving as a state official exclusively. And there was no indication that federal officials would have taken any interest in the case, given that they didn't commence a federal investigation, despite having Dorian Proctor's statements. And for that reason, I think the judgment of the district court was correct, and should be affirmed, unless this court has further questions. Thank you very much. Thank you, Your Honor. I want to address a few of the differences between the prior trials and the most recent trial that Mr. Sorenson just brought up. But to preface that, I'll say those differences sound like new differences from what they put in their brief. And that's not to say that he's wrong. I'll explain why he's wrong about those differences. But I think that's indicative of the fact that those differences are immaterial. They did not make any difference whatsoever in evaluating the sufficiency of the evidence, and evaluating the validity of the jury's verdict. Mr. Sorenson said that in Bell it was undisputed that Ms. Proctor was continuing to provide information to law enforcement. I don't know whether the defense disputed that in the Bell trial. But what I do know is that there was evidence in the most recent trial record from David Phones that Ms. Proctor was continuing to provide information up until her murder. That's at the appendix pages 387 through 389. It was information about David, Tyler, and others. And she was also providing information about individuals outside of the task force's jurisdiction, specifically in Harrisburg and Dauphin County. Detective Phones also wanted to try to develop new information from Ms. Proctor. He wanted to develop additional information about her source. On the issue of new versus old information, it does not matter even whether Ms. Proctor had new information. The record supports the fact that she did have new information, but it does not matter. The crime could be completely over and done with. That was the case in Stansfield. The fire had been committed. The witness was providing information about the fire. There was no ongoing criminal activity until the defendant tried to murder the witness. Here, there's actually an ongoing drug conspiracy. And Ms. Proctor was providing information about that conspiracy. But if we don't know that Willie Tyler knew anything about that, what does it matter? There's no evidence that Willie knew anything other than that she was going to testify the next day. And maybe he didn't even know that. I think David was trying to push her off and say it's none of your business and got him to cock the gun. But we don't know that Willie Tyler knew anything about what she was doing other than she was going to testify, do we? Well, I think we at least know that he knew that she was going to testify and that she did have information. That, I think, is clear from the record. And I think that's enough to support the inference that he wanted to prevent her further communication with law enforcement, to prevent her continuing cooperation both at David Tyler's trial and ongoing cooperation as to David Tyler, any additional cooperation that she could provide as to Roberta Bell. From where do we draw that? That has to be proven beyond a reasonable doubt that that motivated the murder. What evidence do we have? Again, Your Honor, it's the fact that Ms. Proctor had been cooperating. She had testified at preliminary hearings. She had testified at Ms. Hodge's trial. And she was scheduled to testify the next day at David Tyler's trial. And they're all living in the same community. David Tyler lived about 10 minutes away from Ms. Proctor in the house where both Ms. Hodge, who was prosecuted, and David Tyler, who was being prosecuted, lived. He was getting drugs, at least, from David Tyler. He was involved in an argument about drugs following the murder with David Tyler and Roberta Bell. He was wrapped up in this. And at a minimum, he wanted to prevent her ongoing communications, to prevent her cooperation against his brother and others who were his friends. If the court has no additional questions, I would ask the court to reverse the district court's judgment and uphold the jury's verdict. Thank you. Thank you. The panel thanks counsel for excellent arguments. And we will take the matter under advisement. Please rise. The hearing is adjourned until Wednesday, February 5th at 9.38. Thank you. Thank you.